## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JOHN W.K. WORKMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil No.  16-2585-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security[1] denying Plaintiff John W.K. Workman's application for

supplemental security income under Title XVI of the Social Security Act.[2]  In response to

Plaintiff's brief in this case, Defendant filed a Motion to Reverse and Remand and For Entry of

Final Judgment (Doc. 10).  Plaintiff filed a Response to Defendant's Motion to Reverse and

Remand (Doc. 11), pointing to Defendant's failure to identify any errors or basis for a remand

for further administrative adjudication.  Defendant has not replied to Plaintiff's response.  The

Court finds that Defendant's findings are not supported by substantial evidence, but does not

find that the record establishes the basis for an immediate award of benefits in lieu of remand.

Thus, the Court grants Defendant's motion for remand, and directs the Commissioner to

reconsider its analyses at steps two and three, and if necessary, at steps four and five, consistent

with the Administrative Law Judge's errors and the Court's concerns identified in this decision.

---

[1]On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as the Acting Commissioner of Social Security.

[2]42 U.S.C. §§ 1381–1383c.

## I.     Procedural History

On January 23, 2013, Plaintiff applied for supplemental security income, alleging

disability beginning May 27, 2012.  The claim was denied initially and upon reconsideration;

after a hearing, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff

was not disabled and the Appeals Council denied Plaintiff's request for review.  Plaintiff then

sought judicial review in this court.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is

supported by substantial evidence in the record as a whole and whether Defendant applied the

correct legal standards.[3]  The Tenth Circuit has defined "substantial evidence" as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In the course

of its review, the court may not re-weigh the evidence or substitute its judgment for that of

Defendant.[5]

## III.     Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment."[6]  An individual "shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do his

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

## IV.    Discussion

Plaintiff challenges the ALJ's determination at step three that Plaintiff's severe impairment of borderline intellectual functioning does not meet the listings at 12.05C or 12.05D,[10] and by implication challenges the ALJ's finding at step two that Plaintiff's depression and anxiety are not severe impairments.  Plaintiff alternatively argues that the ALJ erred at step four in determining Plaintiff's residual functional capacity ("RFC"), which Plaintiff argues is in part a product of the ALJ's improper evaluation of the medical evidence of record.

### A.    Listing 12.05(C) and 12.05(D)

At step three of the sequential evaluation process, the ALJ determines whether the claimant's impairments meet or equal one of the listings in Subpart P, Appendix 1,[11] for if he does, he is disabled.[12]  It is the claimant's burden to present evidence establishing that his

---

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

[9]*Id.*

[10]20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.05 (2014).

[11]20 C.F.R. § 404.1520(d) (2012); 20 C.F.R. § 404.1526 (2011).

[12]20 C.F.R. § 404.1520(d) (2012).

impairment(s) met or equaled listed impairment(s).[13]

> Listing 12.05 states in relevant part that,
>
> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.[14]

This listing requires proof that one of four requirements are satisfied:

> A. Mental capacity evidenced by dependence upon others for personal needs (e.g. toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
> > 1. Marked restriction of activities of daily living; or
> >
> > 2. Marked difficulties in maintaining social functioning; or
> >
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> >
> > 4. Repeated episodes of decompensation, each of extended duration.

The ALJ found that Plaintiff did not meet any of the four alternatives in Listing 12.05. Plaintiff argues that the record establishes that he meets both §§ 12.05(C) and 12.05(D).

---

[13]*Fischer–Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir.2005).

[14]20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.05(C) (2012).

1.      **Listing 12.05(C)**

The Court finds that the ALJ erred in finding that Plaintiff did not meet Listing 12.05(C). The ALJ made no specific findings, but offered the conclusory opinion that Plaintiff "does not have a valid verbal, performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." But, Plaintiff in fact has a documented, undisputedly valid IQ score within the requisite range. At the age of eleven, long before the requisite onset age of twenty-two, Plaintiff had a verbal IQ score of 63, on a Wechsler Intelligence Scale for Children administered in May 2001. Although Plaintiff had higher scores, a performance IQ score of 107 and a full scale IQ of 79 on that test, for purposes of listing § 12.05, the Commissioner is to use the lowest valid IQ score.[15] Further, in March 2013,  psychologist, Dr. Bruce Bean, Ph.D., administered the Wechsler Adult Intelligence Scale to Plaintiff as part of his consultative evaluation. Plaintiff scored 66 in verbal comprehension and 70 in full-scale intelligence. Thus, Plaintiff has met his burden of proving the first prong of § 12.05(C).

The second prong of § 12.05(C) requires proof that the claimant has "a physical or other mental impairment imposing additional and significant work-related limitation of function."[16] Plaintiff argues that he has an additional mental impairment: he has been diagnosed with depression and anxiety. To satisfy this second prong of § 12.05(C), the physical or mental impairment does not have to be independently disabling.[17] Rather, the Tenth Circuit has directed

---

[15]*Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir.1997).

[16]20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05(C) (2012).

[17]*Hinkle*, 132 F.3d at 1353.

5

that the determination of whether this physical or mental impairment imposes significant limitations should closely parallel the step two standard, meaning a de minimis showing of impairment.[18]  Consistent with step two, then, the claimant must show "more than the mere presence of a condition or ailment";[19] but the claimant need not show "a preclusion from any substantial gainful employment."[20]  For the determination of a significant limitation under §12.05(C) does not require a showing that "claimant can perform any gainful activity beyond the analysis as made at step two."[21]

    At step two, the ALJ found only one severe impairment, borderline intellectual functioning.  The ALJ did not find that Plaintiff's diagnosed depression or anxiety were severe impairments, which Plaintiff argues is error.  While the ALJ in conclusory fashion opined that Plaintiff had not proved he met §12.05(C), in his analysis of §12.05(D) and his analyses at steps two and four, the ALJ offered more discussion about other impairments claimed by Plaintiff, including depression and anxiety.  The ALJ acknowledged that Plaintiff is diagnosed with mood disorder, depression and substance abuse disorder, but found that when considered singly or in combination, these impairments presented no "more than minimal limitations in his ability to perform basic work related activities," and thus were not severe impairments for purposes of step two.

    For purposes of § 12.05(C), and consistent with the analysis being parallel to the step two

---

[18]*Id.* at 1352–53 (citing *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir.1997)).

[19]*Id.* at 1352.

[20]*Id.* at 1353.

[21]*Id.*

standard, the claimant must show the impact the impairment would have on his ability to work,[22] and that the condition significantly limits his ability to do basic work activities.  The regulations define basic work activities as the "abilities and aptitudes necessary to do most jobs," and includes the facility to understand, remember, and carry out simple instructions, use judgment, respond appropriately to supervisors and co-workers as well as usual work situations, and deal with changes in a routine work setting.[23]

Some of the evidence Plaintiff points to merely proves the presence of depression and anxiety—that Plaintiff attempted suicide, had suicidal ideation on another occasion, was irritable, angry, worrying, dysthymic affect, and decreased energy.  But other evidence is more related to how the depression and anxiety affected Plaintiff's ability to do basic work activities—poor insight and judgment, difficulties in developing and maintaining relationships, and problems with wanting to be around people are relevant to someone's ability to use judgment, as well as the ability to respond appropriately to others in the work setting.

In considering this evidence the ALJ did not have available any opinions of treating physicians, but had available the opinions of the state agency psychologist, Dr. Bruce Bean, Ph.D. who examined and evaluated Plaintiff, as well as the opinion of Dr. Bergmann-Harms, who merely reviewed the records.  "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."[24]  The ALJ accorded significant weight to the

---

[22]*Id.* at 1352.

[23]20 C.F.R. § 404.1521(b)(3)-(6).

[24]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)).

opinion of Dr. Bergmann-Harms; and in somewhat confusing fashion, accorded various, lesser weights to the various opinions of Dr. Bean.[25]  But, generally, more weight should be accorded to the provider who examines and evaluates a claimant, than the provider who merely reviews records.[26]   In so doing, the ALJ's evaluation of the opinions of Drs. Bean and Bergmann-Harms failed to fully consider the requisite factors as set forth in the Tenth Circuit's decision in *Goatcher v. United States Department of Health & Human Services*.[27]

Moreover, in pointing to certain evidence to discredit Dr. Bean's opinion, the ALJ either ignored other evidence consistent with Dr. Bean's opinion, or gave the evidence short shrift.  For example, Dr. Bean opined that Plaintiff's borderline intellectual functioning, when considered in combination with his depression and anxiety, limited Plaintiff's ability to interact with people. This was consistent with evidence from Plaintiff, his third-party witnesses, as well as a former supervisor that Plaintiff in fact had difficulty interacting with people in the workplace.  The former supervisor noted his difficulties in talking with Plaintiff, the fact that Plaintiff would not make eye contact with him, and the fact that Plaintiff seemingly could not understand his simple instructions.  Furthermore, the ALJ summarily dismissed Dr. Bean's assessment that Plaintiff

---

[25]On the one hand, in the step two analysis, the ALJ expressly accorded minimal weight to Dr. Bean's opinions that Plaintiff's mental impairments limit him to simple, routine and repetitive tasks and further limit his ability to interact socially.  Yet, the ALJ adopted these limitations in his determination of RFC.  On the other hand, in the step four analysis, the ALJ expressly accorded partial weight to Dr. Bean's opinion that Plaintiff had difficulties in social interactions, but expressly accorded no weight to Dr. Bean's opinion that Plaintiff would function best in a supportive environment.

[26]20 C.F.R. §416.927(c)(1) (2017).

[27]52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6))(these factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion).

had a Global Assessment of Functioning ("GAF") score of 50, which is indicative of serious symptoms.[28]

Because the ALJ neither properly evaluated the opinions of the doctors as well as other evidence that spoke to the effect of Plaintiff's depression and anxiety or his ability to do basic work activities, for purposes of step two and determination at step three of whether Plaintiff meets Listing 12.05(C), the Court concludes a reversal and remand is appropriate. The Court disagrees with Plaintiff that the severity of his depression and anxiety for purposes of step two and Listing 12.05(C) is established by substantial evidence in the record and finds that remand, with additional fact finding and clear analysis is appropriate.

### 2. Listing 12.05(D)

While the ALJ more thoroughly discussed the evidence relating to the Plaintiff's activities of daily living, social functioning, and maintaining concentration, persistence, or pace, upon remand, assuming there is not a determination of disability at step two, or at step three in meeting Listing 12.05(C),  the ALJ should reconsider these findings as well, after performing a proper evaluation of the opinions of Drs. Bean and Bergmann-Harms, and considering all of the record evidence.

### V. Conclusion

Because the Court finds that there is not substantial evidence supporting the decision of the Commissioner, the Court grants Defendant's motion for reversal and remand (Doc. 10) and directs the Commissioner to direct the ALJ to reconsider the evidence and reconsider its analyses at steps two, three, and if necessary steps four and five.

---

[28]Plaintiff had a GAF score of 30 at the time of his emergency room admission after the suicide attempt in 2013.  The ALJ acknowledged that a score of 30 is consistent with serious impairments in functioning.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g).**

**IT IS SO ORDERED.**

Dated: March 6, 2017

                                        S/ Julie A. Robinson

                                        JULIE A. ROBINSON

                                        UNITED STATES DISTRICT JUDGE